**BEFORE THE JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE 1-800 CONTACTS ANTITRUST LITIGATION | Case No. MDL No. 2770 |

# 1-800 CONTACTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR TRANSFER AND COORDINATION OF RELATED ACTIONS PURSUANT TO 28 U.S.C. § 1407

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....... 1
II. BACKGROUND ....... 4
A. These Cases All Challenge Trademark Litigation and Settlements in Utah ....... 4
B. 1-800 Contacts Has Sought to Consolidate These Cases for All Purposes in the District of Utah. ....... 7
1. The California Actions Were Transferred to the District of Utah ....... 7
2. Eastern District of Pennsylvania Actions ....... 8
3. District of Columbia Actions ....... 9
C. More than a Dozen Potential Witnesses Are in Utah. ....... 9
D. This Litigation Has No Meaningful Connection to the District of Columbia. ....... 10
III. ARGUMENT ....... 11
A. MDL Consolidation Is Premature Because Section 1404 Motions Are Pending That Would Consolidate the Actions for All Purposes ....... 11
1. The Panel Has Repeatedly Denied MDL Consolidation Where Section 1404 Motions Are Pending ....... 11
2. MDL Consolidation Risks Trials in Three Different Courts of the Same Claims on Behalf of the Same Class ....... 12
3. MDL Consolidation Should Not Be Granted Based on Plaintiffs' Proposal to Dismiss and Refile in the District of Columbia ....... 13
B. In the Alternative, the Cases Should Be Consolidated in Utah for Pretrial Purposes ....... 15
1. Utah Is the Logical and Efficient Forum for These Cases ....... 15
2. Convenience Factors Also Weigh in Favor of Consolidation in Utah ....... 17
3. Other Factors Do Not Tip the Balance in Favor of Washington, D.C. ....... 18
4. Consolidation in Washington, D.C. Would Reward Forum-Shopping ....... 19
IV. CONCLUSION ....... 20

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
No. 2:07-CV-591 CW, 2012 WL 113812 (D. Utah Jan. 13, 2012), *aff'd*, 722 F.3d 1229 (10th Cir. 2013) ....................6

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
755 F. Supp. 2d 1151 (D. Utah 2010), *aff'd in part, rev'd in part*, 722 F.3d 1229 (10th Cir. 2013)....................6

*1-800Contacts, Inc. v. Mem'l Eye, P.A.*,
No. 2:08-CV-983 TS, 2010 WL 988524 (D. Utah Mar. 15, 2010) ....................2, 6, 17

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
626 F.3d 699 (2d Cir. 2010)....................14

*In re Amoxicillin Patent & Antitrust Litig.*,
449 F. Supp. 601 (J.P.M.L. 1978)....................16

*In re ATM Interchange Fee Antitrust Litigation*,
350 F. Supp. 2d 1361 (J.P.M.L. 2004)....................11

*In re Best Buy Co., Inc., California Song Beverly Credit Card Act Litigation*,
804 F. Supp. 2d 1376 (J.P.M.L. 2011)....................2, 11

*In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*,
424 F. Supp. 504 (J.P.M.L. 1976)....................15

*Cont'l Grain Co. v. The FBL-585*,
364 U.S. 19 (1990)....................13

*In re DirectBuy, Inc., Mktg. & Sales Practices Litig.*,
682 F. Supp. 2d 1349 (J.P.M.L. 2010)....................18

*In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*,
190 F. Supp. 3d 1361 (J.P.M.L. 2016)....................15

*In re Dollar Tree Stores, Inc., Fair Labor Standards Act (FLSA) and Wage and Hour Litigation*,
829 F. Supp. 2d 1376 (J.P.M.L. 2011)....................11

*EEOC v. Univ. of Pennsylvania*,
850 F.2d 969 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990) ....................14

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*In re Facebook Internet Tracking Litig.*,
844 F. Supp. 2d 1374 (J.P.ML. 2012)....................15

*In re Gen. Motors LLC Ignition Switch Litig.*,
26 F. Supp. 3d 1390, 1391 (J.P.M.L. 2014)....................16

*In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*,
899 F. Supp. 2d 1378 (J.P.M.L. 2012)....................11

*In re InPhonic, Inc., Wireless Phone Rebate Litig.*,
460 F. Supp. 2d 1380 (J.P.M.L. 2006)....................15

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
330 U.S. 518 (1947)....................17

*In re Kugel Mesh Hernia Patch Prod. Liab. Litig.*,
493 F. Supp. 2d 1371 (J.P.M.L. 2007)....................15

*Lens.com v. 1-800 Contacts, Inc.*,
No. 2:12CV00352 DS, (D. Utah Mar. 3, 2014) ECF No. 91....................2, 6, 17

*Lexecon Inc. v. Milberg Weiss Bershad Hynds & Lerach*,
523 U.S. 26 (1998)....................12

*In re McDonald's French Fries Litig.*,
444 F. Supp. 2d 1342 (J.P.M.L. 2006)....................15

*In re Michaels Stores, Inc., Pin Pad Litigation*,
844 F. Supp. 2d 1368 (J.P.M.L. 2012)....................11, 12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
398 F. Supp. 2d 1356 (J.P.M.L. 2005)....................16

*In re Porcine Circovirus (PCV) Vaccine Products Patent Litigation*,
655 F. Supp. 2d 1348 (J.P.M.L. 2009)....................11

*In re Republic W. Ins. Co. Ins. Coverage Litigation*,
206 F. Supp. 2d 1364 (J.P.M.L. 2002)....................11

*In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices Litig.*,
178 F. Supp. 3d 1377, 1379 (J.P.M.L. 2016)....................15

*Stephen L. LaFrance Pharm., Inc. v. Unimed Pharm., Inc.*,
No. 09-1507 (KSH), 2009 WL 3230206 (D.N.J. Sept. 30, 2009) ....................3, 15, 16

**Page(s)**

*Van Dusen v. Barrack*,
376 U.S. 612 (1964)....................13, 14, 20

*FTC v. Watson Pharm., Inc.*,
611 F. Supp. 2d 1081 (C.D. Cal. 2009) ....................2, 15, 16, 17

**FEDERAL STATUTES**

28 U.S.C. § 1404.................... 1, passim

28 U.S.C. § 1407.................... 2, passim

**OTHER AUTHORITIES**

Wright & Miller, 7B Fed. Prac. & Proc. Civ. § 1798.1 (3d ed.)....................12, 13, 14

Rhonda Wasserman, *Dueling Class Actions*, 80 B.U. L. Rev. 461 (2000)....................12, 13

https://thepointsguy.com/guide/best-and-worst-airports-usa/....................18

https://www.ftc.gov/news-events/press-releases/2016/08/ftc-sues-1-800-contacts-charging-it-harms-competition-online ....................19

https://www.slcairport.com/assets/pdfDocuments/Flight-Schedule-Info/2017-02-Domestic-non-stop-flights.pdf ....................18

## I. INTRODUCTION

The Panel should deny the MDL request *without prejudice* because motions are already pending which would transfer these cases to one court for all purposes under 28 U.S.C. § 1404. If those two motions are granted (two other similar requests have already been granted), then all six of these cases will be consolidated for all purposes in the District of Utah, and the MDL request will be moot. Should either transfer request be denied, then 1-800 Contacts respectfully requests that the Panel grant an MDL request at that time, ordering consolidated pre-trial proceedings in the District of Utah.

The six putative antitrust class actions before the Panel each assert essentially the same claims on behalf of essentially the same plaintiffs. In each case, a putative national class of contact lens purchasers challenges as anticompetitive trademark litigation filed by 1-800 Contacts in Utah and resulting trademark settlements negotiated by 1-800 Contacts in Utah. Given the overlapping claims and classes, the cases cannot be tried separately in different jurisdictions. This is not disputed. In meet-and-confer, plaintiffs' counsel has agreed that the cases should be tried together. Singla Decl. ¶¶ 1-2.

To that end, 1-800 Contacts has filed motions to transfer each case to the District of Utah, and a motion in the District of Utah to consolidate them. The Northern and Southern Districts of California have already granted two such transfer requests. A transfer motion is pending in the District Court for the District of Columbia seeking to transfer the two cases filed there to Utah. The D.C. district court ordered briefing on that motion to be completed by the first week of March. A final transfer motion is pending in the Eastern District of Pennsylvania, seeking to transfer two cases filed there to Utah. That court has, however, stayed consideration of 1-800 Contacts' transfer motion until this Panel rules on the MDL petition. If the MDL petition is

denied without prejudice (or expressly held in abeyance), the Pennsylvania court will then be able to proceed to rule on the pending § 1404 transfer motion.

This Panel's precedent favors giving district courts a chance to achieve consolidation through § 1404 transfer. The Panel has repeatedly "denied [MDL] centralization where there is a 'reasonable prospect' that the resolution of Section 1404 motions could eliminate the multidistrict character of the actions before us." *In re Best Buy Co., Inc., California Song Beverly Credit Card Act Litigation*, 804 F. Supp. 2d 1376, 1378-79 (J.P.M.L. 2011). That is because Section 1404(a) transfers are "for all purposes and not, as is the case with centralization under Section 1407, for pretrial purposes only." *Id.* at 1378. For that reason, the Panel has explained that "centralization under Section 1407 should be the last solution after considered review of all other options." *Id.*

If either of the pending § 1404 transfer requests is denied or if the Panel decides to order MDL consolidation now, then the Panel should consolidate the actions in Utah, where 1-800 Contacts has its headquarters, where most of the witnesses are located, where the underlying litigations were filed and settled, and where two judges have already considered similar antitrust claims challenging 1-800 Contacts' assertion of these same trademark rights. *See 1-800 Contacts, Inc. v. Mem'l Eye, P.A.*, No. 2:08-CV-983 TS, 2010 WL 988524, at *6 (D. Utah Mar. 15, 2010); *Lens.com v. 1-800 Contacts, Inc.*, No. 2:12CV00352 DS (D. Utah Mar. 3, 2014), ECF No. 91, at 2 (Singla Decl. Ex. 7 (Raphael Decl. Ex. 16)). One of the actions here has already been assigned to one of those judges, the Honorable Ted Stewart. Mot. Ex. 2. It will promote judicial efficiency to transfer these challenges to prior litigation and settlements to the courts in Utah that handled the underlying suits. *See FTC v. Watson Pharm., Inc.*, 611 F. Supp. 2d 1081 (C.D. Cal. 2009) (transferring antitrust challenges to settlements of patent litigation to the district

where the litigation took place); *Stephen L. LaFrance Pharm., Inc. v. Unimed Pharm., Inc.*, No. 09-1507 (KSH), 2009 WL 3230206, at *6 (D.N.J. Sept. 30, 2009) (same).

Certainly, Utah is a far more logical and efficient forum than Washington, D.C.—to which these cases have no connection whatsoever. None of the parties to the underlying trademark actions or other retailers of contact lenses is located in Washington, D.C. A plurality, if not the majority, of potential witnesses resides in Utah, with none residing in Washington, D.C. All of the cases assert nationwide consumer classes. Only one of the six actions, *Bartolucci*, even involves named plaintiffs who reside in D.C. The plaintiff in the other D.C. action, *Henry*, resides in New York and her complaint is copied virtually verbatim from one of the California actions. The six cases here assert seventeen causes of action under federal, California, New York, New Jersey, Pennsylvania, and Texas law. By contrast, only one cause of action is asserted under Washington, D.C. law. Counsel are on both coasts. And a three month's difference in median time to disposition is negligible. The case for Utah on the merits is so overwhelming that one of the plaintiffs previously *stipulated* to transfer to Utah. Singla Decl. Ex. 16.

Plaintiffs' counsel have said in meet and confer that once the cases are transferred by this Panel, they intend to dismiss their individual complaints and file a consolidated, class action in the transferee forum. Singla Decl. ¶ 2. As Plaintiffs' counsel candidly explained, Plaintiffs can thus effectively obtain a transfer for all purposes through the MDL process. 1-800 Contacts submits that this would be an abuse of the MDL process and would evade the authority of district courts to decide on the most appropriate trial venue using the well-established factors under § 1404. Put simply, it appears Plaintiffs have filed an MDL request in the hope that this Panel will give them a result—transfer to Washington, D.C.—that they believe they are unlikely to obtain

through § 1404 motions. Such conduct should not be rewarded; plaintiffs' counsel should not be encouraged to file multiple duplicative actions in different courts to try and have this panel grant them a venue of their choosing.

In short, all parties are in agreement that these actions should be litigated in a single forum; the threshold issue is whether § 1404 motions or MDL consolidation is the superior means to achieve that goal. 1-800 Contacts respectfully submits that, notwithstanding Plaintiffs' MDL gamesmanship, the Panel should (1) deny the present motion without prejudice to permit the pending § 1404 motions to be decided and (2) consolidate the actions in Utah if the § 1404 motions do not themselves achieve that goal.

## II. BACKGROUND

### A. These Cases All Challenge Trademark Litigation and Settlements in Utah

The gravamen of these antitrust cases is that 14 or more trademark litigations and ensuing settlements involving 1-800 Contacts were allegedly anticompetitive. Almost all of that underlying conduct took place in Utah. None took place in Washington, D.C. (or Pennsylvania).

Defendant 1-800 Contacts is a contact lens retailer headquartered in Draper, Utah. Thompson Compl. (Mot. Ex. 1) ¶ 21; Stillings Compl. (Mot. Ex. 2) ¶ 2; Bean Compl. (Mot. Ex. 3); Zimmerman Compl. ¶ 12 (Mot. Ex. 4); *Bartolucci* Compl. (Mot. Ex. 5) ¶ 10; *Henry* Compl. (Mot. Ex. 6) ¶ 20. 1-800 Contacts has been a leader in lowering retail prices for many years. Thompson Compl. (Mot. Ex. 1) ¶¶ 35-38, 47; Stillings Compl. (Mot. Ex. 2) ¶ 76; Bean Compl. (Mot. Ex. 3) ¶ 21; Zimmerman Compl. ¶ 21 (Mot. Ex. 4); *Bartolucci* Compl. (Mot. Ex. 5) ¶ 10; *Henry* Compl. (Mot. Ex. 6) ¶ 20. As its name suggests, 1-800 Contacts began selling contact lenses over the phone, but now sells them over the Internet as well. 1-800 Contacts' success invited competition, and today there are numerous other online retailers of contact lenses.

Thompson Compl. (Mot. Ex. 1) ¶¶ 24-30, 48; Stillings Compl. (Mot. Ex. 2) ¶¶ 35, 78; Bean Compl. (Mot. Ex. 3) ¶ 22; Zimmerman Compl. ¶ 22 (Mot. Ex. 4); *Bartolucci* Compl. (Mot. Ex. 5) ¶ 10; *Henry* Compl. (Mot. Ex. 6) ¶ 20.

1-800 Contacts invested substantial sums and efforts, from its home in Utah, to develop its trademark. But other companies then sought to profit from the fame of 1-800 Contacts' trademark by purchasing advertising that appears when consumers search for "1 800 Contacts" on internet search engines. Beginning in 2004, 1-800 Contacts sent a series of cease-and-desist letters to online retailers threatening to sue them for trademark infringement for their purchases of search engine advertising based on 1-800 Contacts' trademarks. Thompson Compl. (Mot. Ex. 1) ¶ 49; Stillings Compl. (Mot. Ex. 2) ¶¶ 82-90; Bean Compl. (Mot. Ex. 3) ¶ 24; Zimmerman Compl. (Mot. Ex. 4); *Bartolucci* Compl. (Mot. Ex. 5) ¶ 18; *Henry* Compl. (Mot. Ex. 6) ¶¶ 48-50. Numerous lawsuits and settlements followed, all but one of which were in the District of Utah.[1] Thompson Compl. (Mot. Ex. 1); Bean Compl. (Mot. Ex. 3) ¶ 26; Zimmerman Compl. ¶ 24 (Mot. Ex. 4); *Bartolucci* Compl. (Mot. Ex. 5) ¶ 18.

Fourteen retailers ultimately settled 1-800 Contacts' trademark claims. Thompson Compl. (Mot. Ex. 1) ¶¶ 7, 53, 59; Stillings Compl. (Mot. Ex. 2) ¶¶ 89, 93; Bean Compl. (Mot. Ex. 3) ¶¶ 5, 29; Zimmerman Compl. (Mot. Ex. 4) ¶ 26; *Bartolucci* Compl. ¶ 19 (Mot. Ex. 5); *Henry* Compl. (Mot. Ex. 6) ¶¶ 7, 52. In these settlement agreements, the defendant retailers agreed not to engage in the allegedly infringing conduct, *i.e.*, that they would not use 1-800 Contacts' trademarks to buy paid search advertising on search engines such as Google and Bing. Thompson Compl. (Mot. Ex. 1) ¶ 54; Stillings Compl. (Mot. Ex. 2) ¶¶ 82-85; Bean Compl. (Mot.

---

[1] The lone exception was a suit filed by 1-800 Contacts in the Southern District of New York alleging breach of a settlement of a trademark litigation originally filed in that District. *See* Singla Decl. Ex. 7 (Raphael Decl. Ex. 15).

Ex. 3) ¶¶ 4-5, 29-31; Zimmerman Compl. (Mot. Ex. 4) ¶¶ 5, 29; *Bartolucci* Compl. (Mot. Ex. 5) ¶ 19; *Henry* Compl. (Mot. Ex. 6) ¶ 53. 1-800 Contacts, in turn, agreed not to engage in similar conduct, *i.e.*, it would not use the defendant retailers' trademarks to buy paid search advertising. Thompson Compl. (Mot. Ex. 1) ¶ 54; Stillings Compl. (Mot. Ex. 2) ¶ 92; Bean Compl. (Mot. Ex. 3) ¶ 32; Zimmerman Compl. ¶¶ 5, 29 (Mot. Ex. 4); *Bartolucci* Compl. (Mot. Ex. 5) ¶ 19; *Henry* Compl. (Mot. Ex. 6) ¶ 53. 1-800 Contacts lost one case, which was litigated through summary judgment and appeal in Utah. *See 1-800 Contacts, Inc. v. Lens.com, Inc.*, 755 F. Supp. 2d 1151, 1181 (D. Utah 2010), *aff'd in part, rev'd in part*, 722 F.3d 1229 (10th Cir. 2013).

The central allegation of the complaints is that 1-800 Contacts' assertions of its trademark rights were baseless and anticompetitive. Thompson Compl. (Mot. Ex. 1) ¶¶ 6-7, 50; Stillings Compl. (Mot. Ex. 2) ¶¶ 82, 89-91; Bean Compl. (Mot. Ex. 3) ¶¶ 25-29, 34; Zimmerman Compl. (Mot. Ex. 4) ¶ ¶ 25-26, 44, 61; *Bartolucci* Compl. (Mot. Ex. 5) ¶¶ 5, 73; *Henry* Compl. (Mot. Ex. 6) ¶¶ 6, 118. Plaintiffs' complaints omit, however, that two judges of the United States District Court for the District of Utah separately considered similar claims and held that 1-800 Contacts' claims were "not baseless." *See Mem'l Eye, P.A.*, 2010 WL 988524, at *6; *Lens.com*, No. 2:12CV00352 DS (D. Utah), ECF No. 91, at 2 (Singla Decl. Ex. 7 (Raphael Decl. Ex. 16)). A third judge in that District recognized that 1-800 Contacts' suit "involve[d] an unsettled area of law given the emerging and changing nature of Internet competition." *1-800 Contacts, Inc. v. Lens.com, Inc.*, No. 2:07-CV-591 CW, 2012 WL 113812, at *3 (D. Utah Jan. 13, 2012), *aff'd*, 722 F.3d 1229 (10th Cir. 2013).

As Plaintiffs acknowledge, all six actions "contain substantially similar factual allegations" and all "assert violations of Section 1 of the Sherman Act," Mot. at 1, as well as other antitrust claims based on "the same nucleus of operative facts pertaining to the Defendants'

conduct." *Id.* at 6. There are some minor differences in class definitions between the six actions, including the length of the class period—some of which go back to 2012 and others of which go back to 2004. In addition, some of the classes include only online purchasers, whereas some include all 1-800 Contacts purchasers, and some of the classes include individuals who purchased contact lenses from the other contact lens retailers that entered into the settlement agreements with 1-800 Contacts.

## B. 1-800 Contacts Has Sought to Consolidate These Cases for All Purposes in the District of Utah.

### 1. The California Actions Were Transferred to the District of Utah

On September 21, 2016, the *Stillings* Action was filed in the Northern District of California against 1-800 Contacts. Mot. Ex. 2. That has triggered five copycat complaints over the past four months. The first copycat complaint, the *Thompson* Action, was filed in the Southern District of California on October 13, 2016. Mot. Ex. 1.

On October 28, 2016, 1-800 Contacts moved to transfer the *Stillings* Action from the Northern District of California to the District of Utah, arguing, among other things, that transfer would be convenient and fair because the events underlying the litigation occurred there and the majority of witnesses with relevant knowledge live there. Singla Decl. Ex. 6. Ruling from the bench, the court granted 1-800 Contacts' motion and transferred the action to the District of Utah. Singla Decl. Ex. 9. The court found that the relevant "factors all combine to weigh heavily in favor of transfer to the [D]istrict of Utah." *Id.* at 6:3-4. The court also noted that "defendant's headquarters is located in Utah, which means that virtually all of the documents, witnesses, and other evidence in this antitrust case will be found in Utah." *Id.* at 6:19-22.

Plaintiffs and 1-800 Contacts jointly moved to transfer the *Thompson* Action from the Southern District of California to the District of Utah on November 16, 2016. Singla Decl. Ex. 16. The court granted the motion on November 21, 2016. Singla Decl. Ex. 10.[2]

**2. Eastern District of Pennsylvania Actions**

The second set of copycat complaints were filed in Philadelphia.[3] On November 3, 2016 the *Bean* Action was filed in the Eastern District of Pennsylvania. Mot. Ex. 3. The *Zimmerman* Plaintiffs filed their complaint in the same district on December 13, 2016, and it was assigned to the same judge presiding over the *Bean* Action. Mot. Ex. 4. The factual allegations of the Pennsylvania actions are substantively almost identical to the California actions that were transferred to Utah. In addition to claims under federal and California law, the Pennsylvania cases include Pennsylvania, New York, New Jersey, and Texas law claims. The cases include named plaintiffs from each of those states.

1-800 Contacts filed motions to transfer the *Bean* and *Zimmerman* Actions on December 16, 2016 and December 29, 2016, respectively. Singla Decl. Exs. 4, 16. The parties then agreed to consolidate briefing on the two motions, and Plaintiffs filed a joint opposition brief on January 19, 2017. After the D.C. Plaintiffs filed their motion before the JPML, the district court in Philadelphia then stayed the actions pending resolution of the JPML motion. Singla Decl. Ex. 17.

---

[2] Upon transfer to the District of Utah, the *Stillings* and *Thompson* Actions were assigned to different judges. On December 15, 2016, 1-800 Contacts filed a motion to consolidate the actions before a single judge. Singla Decl. Ex. 14. That motion is currently pending before the judge in the *Thompson* Action.

[3] *See Bean v. 1-800 Contacts, Inc.*, No. 2:16-cv-05726-AB (E.D. Pa.); *Zimmerman v. 1-800 Contacts, Inc.*, 2:16-cv-06417-AB (E.D. Pa.).

### 3. District of Columbia Actions

The third set of copycat complaints were filed in the District Court for the District of Columbia after both California actions had been transferred to the District of Utah and after 1-800 Contacts moved to transfer the Pennsylvania actions to Utah. The *Bartolucci* Action was filed on January 13, 2017, seeking to represent the same nationwide class of 1-800 Contacts purchasers based on the same conduct and same Sherman Act claim as the four already-filed actions. Mot. Ex. 5.

On January 18, 2017, Plaintiff Henry filed the second action in Washington, D.C., even though she resides in New York, also seeking to represent the same nationwide class of 1-800 Contacts purchasers based on the same conduct and same claims as the previously-filed actions. Mot. Ex. 6. Ms. Henry's complaint is taken almost verbatim from the *Thompson* complaint pending in the District of Utah. *Compare* Mot. Ex. 6 *with* Motion Ex. 1.

1-800 Contacts moved to transfer both the *Henry* and *Bartolucci* Actions to the District of Utah on January 31, 2017. Singla Decl. Exs. 1-2. On February 1, 2017, Plaintiffs in those actions moved to stay those actions pending the Panel's decision on Plaintiffs' motion for transfer under Section 1407. *Id.* Exs. 11-12. By order dated February 3, the D.C. court denied the stay as to the transfer motion and ordered briefing, while staying all other proceedings. *Id.* Ex. 13. Briefing on the motion to transfer should be complete by March 6, 2017.

## C. <u>More than a Dozen Potential Witnesses Are in Utah.</u>

More than a dozen witnesses to these events work and reside in Utah. At least eight witnesses are former 1-800 Contacts employees, including the company's former:

- Online Acquisition Manager responsible for managing 1-800 Contacts' Internet marketing team;

- Senior Marketing Manager; Associate Director of Marketing; Senior Manager, Search Marketing; and Search Marketing Associate;
- Vice-President, E-Commerce; and
- General Counsel and Associate General Counsel.

Singla Decl. Exs. 3, 5, 8 (Lacey Decl. ¶ 4(a)-(h)); *id.* Ex. 17 (Raphael Decl. ¶¶ 2-4). In addition, the company's current CEO, Chief Marketing Officer, Marketing Director, Senior Marketing Manager, Search Marketing Analyst, and Vice President of Digital Commerce all work and reside in Utah. Singla Decl. Exs. 3, 5, 8 (Lacey Decl. ¶ 3).

Other potential witnesses also are in Utah. Standard Optical, one of the trademark defendants, has its headquarters in Utah. Singla Decl. Ex. 7 (Raphael Decl. Ex. 23). 1-800 Contacts' outside counsel in its underlying trademark litigations work in the Salt Lake City office of Holland & Knight LLP. *Id.* (Raphael Decl. ¶ 5, Exs. 1-14). And in a number of cases, the trademark defendants' outside counsel in the underlying trademark litigations are in Utah as well. *Id.* (Raphael Decl. Exs. 7, 10, 13).

**D. <u>This Litigation Has No Meaningful Connection to the District of Columbia.</u>**

These six actions have no meaningful connection to Washington, D.C. No significant events at issue took place in Washington, D.C. Vision Direct, the other named defendant, is headquartered in Bellevue, Washington. Mot. Ex. 6, ¶ 21. The other trademark defendants and other major contact lens retailers have their headquarters in Utah, Pennsylvania, Washington, Arkansas, Illinois, Missouri, New York, Ohio, Texas, Wyoming, and Canada. Singla Decl. Ex. 7 (Raphael Decl. Exs. 17-35). None of the trademark defendants or any major contact lens retailer is located in the District of Columbia. Five of the six actions do not even have plaintiffs from the

District of Columbia or claims under D.C. law. And the only connection in *Bartolucci* is the residence of its two named plaintiffs and one claim under D.C. law.

## III. ARGUMENT

### A. MDL Consolidation Is Premature Because Section 1404 Motions Are Pending That Would Consolidate the Actions for All Purposes

Plaintiffs' motion to consolidate these actions for pre-trial purposes should be denied as premature because there are pending motions to transfer that could consolidate all of the actions for all purposes.

#### 1. The Panel Has Repeatedly Denied MDL Consolidation Where Section 1404 Motions Are Pending

The Panel has repeatedly "denied centralization where there is a 'reasonable prospect' that the resolution of Section 1404 motions could eliminate the multidistrict character of the actions before us." *In re Best Buy, 804* F. Supp. 2d at 1378-79. *See In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012) (denying Section 1407 motion where motions pending to transfer actions to forum where previously filed actions already had been transferred pursuant to Section 1404); *In re ATM Interchange Fee Antitrust Litigation*, 350 F. Supp. 2d 1361, 1362 & n.1 (J.P.M.L. 2004) (same).[4]

Here, two actions already have been transferred from California courts to the District of Utah. There are pending motions to transfer all four remaining actions from Philadelphia and

---

[4] *See also In re Michaels Stores, Inc., Pin Pad Litigation*, 844 F. Supp. 2d 1368, 1369 (J.P.M.L. 2012) (denying Section 1407 motion where "one action included in the present Section 1407 motion has already been transferred . . . pursuant to Section 1404"); *In re Dollar Tree Stores, Inc., Fair Labor Standards Act (FLSA) and Wage and Hour Litigation*, 829 F. Supp. 2d 1376, 1377 (J.P.M.L. 2011) (same where "Section 1404 motions are pending in the remaining three actions"); *In re Porcine Circovirus (PCV) Vaccine Products Patent Litigation*, 655 F. Supp. 2d 1348, 1349 (J.P.M.L. 2009) (same where motion to transfer had been briefed); *In re Republic W. Ins. Co. Ins. Coverage Litigation*, 206 F. Supp. 2d 1364, 1365 (J.P.M.L. 2002) (same where Section 1404(a) motions were pending).

Washington, D.C. to Utah as well. Consistent with its prior practice, the Panel should not decide on MDL consolidation until these Section 1404 transfer motions are decided. In the event that one or both of the Section 1404 motions are denied, a renewed MDL petition would make sense, as "the last solution after considered review of all other options" for consolidation. *In re Michaels Stores*, 844 F. Supp. 2d at 1369.

### 2. MDL Consolidation Risks Trials in Three Different Courts of the Same Claims on Behalf of the Same Class

Proceeding with MDL consolidation rather than transfers under Section 1404, creates a substantial risk of three trials of the same claims by the same class in different jurisdictions. As the Panel is aware, cases are returned to their original transferor courts after the completion of MDL pretrial proceedings. By statute, "[e]ach action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated." 28 U.S.C. § 1407(a); *see also Lexecon Inc. v. Milberg Weiss Bershad Hynds & Lerach*, 523 U.S. 26, 28 (1998) (noting that an MDL court cannot transfer the case to itself upon completion of pretrial work).

Thus, unless the cases are transferred for all purposes under Section 1404 pursuant to 1-800 Contacts' pending motions, there is a real risk that the cases would return to three different courts for at least three different trials of the same claims. That situation would be simply unworkable. While separate trials for multiple individual actions or different classes can be inefficient, unfair to defendants, and create some risk of inconsistent judgments, courts have some tools to try to ameliorate those problems. *See generally* Wright & Miller, 7B Fed. Prac. & Proc. Civ. § 1798.1; Wasserman, *Dueling Class* Actions, 80 B.U.L. Rev. 461, 484 (2000). But *duplicative class actions* being tried in multiple districts lead to unique inefficiency and unfairness, including a serious risk of inconsistent judgments and intractable preclusion

questions. *See Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1990); Wright & Miller, 7B Fed. Prac. & Proc. Civ. § 1798.1 ("[T]hese competing and duplicative [class] actions not only generate unnecessary litigation and duplicative fees, but also . . . increase the risk of disparate verdicts raising serious questions of fairness. . . ."); Wasserman, *Dueling Class Actions*, 80 B.U.L. Rev. at 484 (noting existence of "more complex and time-consuming" preclusion issues in dueling class actions).

Different juries in different jurisdictions could arrive at different judgments or, at a minimum, different damage awards each of which would apply to some but not all of the classes before the other juries. As noted, there are slight differences in the various proposed class definitions. Each Court would then be required to determine which of the tens of thousands of class members before it are bound by each of the different judgments. 1-800 Contacts' motions to transfer under Section 1404 are the best way to avoid this intractable scenario.

**3. MDL Consolidation Should Not Be Granted Based on Plaintiffs' Proposal to Dismiss and Refile in the District of Columbia**

Plaintiffs have said that, upon MDL transfer, they may dismiss and re-file their actions in the District of Columbia to consolidate the cases for trial in that venue. Singla Decl. ¶ 2. The Panel should not encourage this kind of end run around Section 1404 transfer motions. Not only is it unfair to 1-800 Contacts, but it undermines Congress's intent as reflected in Section 1404 and 1407.

Section 1404 is intended to ensure that the pre-trial and trial venue for a case is in the "place called for in the particular case by considerations of convenience and justice," reflecting traditional factors such as the locus of the underlying events, the location of non-party witnesses, the convenience of the parties, etc. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Plaintiffs

should not be able to use MDL transfer to obtain a trial venue other than what would be the result of a Section 1404 analysis by dismissing and refiling their claims in that district.

Plaintiffs' proposed approach would also be inconsistent with the traditional "first-filed doctrine" courts use to manage duplicative litigation: "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 722 (2d Cir. 2010); *see also EEOC v. Univ. of Pennsylvania*, 850 F.2d 969, 971–72 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990). Here, the first (and second) filed cases are pending in the District of Utah.

Countenancing Plaintiffs' dismiss-and-refile mechanism would invite copycat cases and collusion among plaintiffs' counsel in future cases—precisely the opposite of the transfer statutes' efficiency goals. *Van Dusen*, 376 U.S. at 616. There is no question that the filing of duplicative lawsuits in multiple jurisdictions imposes unnecessary burdens on the courts and on parties. It has been recognized indeed as "one of the most serious concerns with class action practice." 7B Fed. Prac. & Proc. Civ. § 1798.1, n.1 (3d ed.) ("'[T]he filing of multiple class actions on the same matters resulting in the pendency of overlapping or competing class actions in a number of courts [is] one of the most serious concerns with class action practice. Such overlapping class actions consume unnecessary litigation resources, encourage 'gaming' of court filings, and risk inconsistent treatment of like cases.'") (quoting Report of the Task Force on Class Action Legislation to the House of Delegates, § 1, adopted Feb. 10, 2003). If Plaintiffs' gambit were permitted, a Section 1404 transfer motion would become just the opening round of a forum fight. If a defendant prevails on a transfer motion, other plaintiffs could simply game the

process by filing the same case in another district and using the MDL process to try to get a transfer for all purposes to that district.

### B. In the Alternative, the Cases Should Be Consolidated in Utah for Pretrial Purposes

If the Panel decides that MDL consolidation is warranted now or if a district court denies transfer, these actions should be consolidated for pre-trial purposes in the District of Utah.

#### 1. Utah Is the Logical and Efficient Forum for These Cases

Although these are putative nationwide class actions, Utah is the "center of gravity" of each case. *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, 190 F. Supp. 3d 1361, 1363 (J.P.M.L. 2016). Utah is where 1-800 Contacts is headquartered and everything related to these cases occurred. Utah is where 1-800 Contacts developed its trademarks and made decisions as to when and how to assert those trademarks. Utah also is where 1-800 Contacts filed suit to protect its intellectual property and where the relevant agreements were negotiated and executed by 1-800 Contacts employees and the company's Utah counsel. Singla Decl. Exs. 3, 5, 8 (Lacey Decl. ¶ 4(g)-(h)). The Panel has regularly consolidated MDL proceedings in the district where the defendant and its witnesses are located.[5]

Courts also have recognized the logic and efficiency of litigating antitrust cases challenging settlements of intellectual property litigation in the district where the underlying litigation was filed and settled. *Watson Pharm., Inc.*, 611 F. Supp. 2d 1081; *Stephen L.*

---

[5] *See, e.g.*, *In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices Litig.*, 178 F. Supp. 3d 1377, 1379 (J.P.M.L. 2016); *In re Facebook Internet Tracking Litig.*, 844 F. Supp. 2d 1374, 1375 (J.P.ML. 2012) *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, 190 F. Supp. 3d at 1363; *In re Kugel Mesh Hernia Patch Prod. Liab. Litig.*, 493 F. Supp. 2d 1371, 1373 (J.P.M.L. 2007); *In re McDonald's French Fries Litig.*, 444 F. Supp. 2d 1342, 1343 (J.P.M.L. 2006); *In re InPhonic, Inc., Wireless Phone Rebate Litig.*, 460 F. Supp. 2d 1380, 1381 (J.P.M.L. 2006); *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 507 (J.P.M.L. 1976).

*LaFrance Pharm., Inc.*, 2009 WL 3230206. In these cases, private class plaintiffs (and the FTC) filed antitrust cases in California and New Jersey respectively, alleging that the defendant, a company headquartered in Georgia, filed sham patent litigation in the Northern District of Georgia and/or entered into anticompetitive settlements. Noting that (1) there was "no way" to litigate the antitrust case "without re-opening an inquiry into the merits of the Georgia suits," (2) that the Northern District of Georgia was "familiar with the details of the underlying patent litigation," and (3) that the challenged settlement agreements "were negotiated and executed in Georgia," the courts transferred the cases to the Northern District of Georgia. *Watson*, 611 F. Supp. 2d at 1088-89; *see also Stephen L. LaFrance Pharm., Inc.*, 2009 WL 3230206, at *5 ("events surrounding the settlements, the witnesses, and sources of proof" were "concentrated in the Northern District of Georgia").

These cases are consistent with the Panel's practice of transferring actions to district courts that have previously heard other cases involving the same issues raised by the actions to be consolidated. *See, e.g., In re Gen. Motors LLC Ignition Switch Litig.*, 26 F. Supp. 3d 1390, 1391 (J.P.M.L. 2014); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 398 F. Supp. 2d 1356, 1358 (J.P.M.L. 2005) (transferring actions to district where court was "already familiar with the operation" of the industry); *In re Amoxicillin Patent & Antitrust Litig.*, 449 F. Supp. 601, 604 (J.P.M.L. 1978) (same where transferee court had "become familiar" with issues in antitrust case based on experience with related action).

Plaintiffs here challenge the merits of 1-800 Contacts' trademark litigation in the District of Utah. Courts in that District have ruled on some of those underlying trademark cases. Plaintiffs allege that 1-800 Contacts' trademark litigations were objectively baseless. Courts in the District of Utah have also considered antitrust claims alleging that these same trademark

litigations were objectively baseless. *See Mem'l Eye, P.A.*, 2010 WL 988524, at *6 ("the Court finds that [1-800 Contacts'] claim is not baseless"); *Lens.com*, No. 2:12CV00352 DS, ECF No. 91, at 2 (Singla Decl. Ex. 7 (Raphael Decl. Ex. 16)) ("the underlying action was not baseless"). The *Stillings* Action, the first-filed action which was transferred to Utah from the Northern District of California, has been assigned to Judge Ted Stewart, who issued one of these rulings. Mot. Ex. 2. Accordingly, transferring this case to the District of Utah would "conserve judicial resources." *Watson*, 611 F. Supp. 2d at 1088.

By contrast, five of the six cases for which plaintiffs seek consolidation have no connection whatsoever to Washington, D.C. The only connection that the sixth case, the *Bartolucci* action, has to Washington, D.C., is that the plaintiffs reside there. But that connection should carry little weight in a putative national class action. *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("where there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."). This connection to Washington, D.C. certainly pales in comparison to the strong and extensive ties that all of the actions have to Utah.

**2. Convenience Factors Also Weigh in Favor of Consolidation in Utah**

Plaintiffs do not address the litigation's connections to Utah versus Washington, D.C. Instead, they argue that Washington, D.C. would be more convenient for third parties, plaintiffs and counsel. Mot. at 10-12. That is incorrect.

To begin with, plaintiffs cannot argue that the location of witnesses makes Washington, D.C. more convenient than Utah. The plurality, if not the majority, of witnesses are located in Utah, where 1-800 Contacts is headquartered. This includes both current and former employees.

Singla Exs. 3, 5, 8 (Lacey Decl. ¶ 4(a)-(h)) . The remainder of the potential witnesses are dispersed throughout the country and Canada, making Washington, D.C. no more convenient than Utah.

"The convenience of counsel 'is not by itself a factor to be considered under Section 1407 in the Panel's decision. Only if the inconvenience of counsel would impinge on the convenience of the parties or witnesses would the convenience of counsel become a factor to be considered by the Panel." *In re DirectBuy, Inc., Mktg. & Sales Practices Litig.*, 682 F. Supp. 2d 1349, 1350-51 (J.P.M.L. 2010). That is not the case here. After all, two sets of plaintiffs' counsel and 1-800 Contacts' counsel are in California. To the extent the convenience of counsel is relevant, Utah is at least as convenient to counsel as Washington, D.C.

Plaintiffs aver that the Washington area's three airports give it an advantage as a potential MDL forum. But Salt Lake City International Airport has non-stop departures to where all plaintiffs, third-party witnesses and counsel reside.[6] And a recent ranking found it tied for the least delays among major airports and ranked it far above Dulles International Airport in the D.C. area.[7]

### 3. Other Factors Do Not Tip the Balance in Favor of Washington, D.C.

Plaintiffs argue also that the District Court for the District of Columbia is better placed to handle these cases because there are nine MDL proceedings pending there. Mot. at 12-13. But that just means that the District of Utah has more capacity for MDL proceedings. The less than three-month difference between the median time from filing and disposition for each district, Mot. at 12, is immaterial—particularly in an MDL proceeding with the potential to take longer

---

[6] *See* https://www.slcairport.com/assets/pdfDocuments/Flight-Schedule-Info/2017-02-Domestic-non-stop-flights.pdf.

[7] *See* https://thepointsguy.com/guide/best-and-worst-airports-usa/.

than the usual case. At any rate, neither docket-related consideration outweighs the District of Utah's connection to the facts and experience with the underlying trademark litigations.[8]

The Plaintiffs are wrong to suggest that the Federal Trade Commission's administrative action against 1-800 Contacts pending in Washington, D.C. is relevant to the MDL decision. *See* Mot. at 9. The pendency of the administrative action in Washington, D.C. is a matter of statutory default, not convenience, and 1-800 Contacts has no recourse to change the forum. Plaintiffs do not and cannot explain how the pendency of the FTC administrative proceeding in Washington, D.C. will create any efficiency from consolidating pre-trial proceedings there. In any case, the FTC administrative proceeding is scheduled to begin on April 11, 2017,[9] and will likely conclude before any pre-trial proceedings in an MDL.

Plaintiffs in the *Bean* and *Zimmerman* Actions have argued that 1-800 Contacts "implicitly acknowledged Utah's inconvenience in its administrative proceedings before the [FTC]" because correspondence attached to a filing in the FTC action supposedly shows that "***None of the depositions is scheduled to occur in Utah***." Dkt. No. 20 at 3 (emphasis in original). This is completely false. In fact, ***13 depositions*** in the FTC administrative action were held in Utah, more than in any other location, Raphael Decl. ¶ 2—confirming that Utah is the proper and most convenient forum for these actions.

#### 4. Consolidation in Washington, D.C. Would Reward Forum-Shopping

Finally, the Panel should take into account the circumstances in which these cases have come before it. 1-800 Contacts promptly filed motions to transfer pursuant to Section 1404 as

---

[8] The fact that a motion for consolidation of the first filed cases in the District of Utah is still pending does not weigh affirmatively in favor of consolidation in the District of Columbia.

[9] https://www.ftc.gov/news-events/press-releases/2016/08/ftc-sues-1-800-contacts-charging-it-harms-competition-online.

Congress envisioned. Two courts have granted those motions, one with one set of plaintiffs' consent. But new plaintiffs emerged to file new actions far from Utah and then seek MDL transfer, in what would be an end run around Congress's "increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen*, 376 U.S. at 616. MDL consolidation in Washington, D.C. would reward this forum-shopping and denude the value of Section 1404 transfer motions that this Panel has clearly favored as consolidation mechanisms.

## IV. CONCLUSION

Plaintiffs' motion for consolidation in the District of Columbia pursuant to 28 U.S.C. § 1407 should be denied without prejudice pending resolution of motions to transfer to the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1404. In the alternative, the cases should be consolidated under § 1407 in the District of Utah.

Dated: February 15, 2017

Respectfully submitted,

*/s/ Rohit K. Singla*

Rohit K. Singla
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
rohit.singla@mto.com

*Attorneys for Defendant*
*1-800 Contacts, Inc.*

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE 1-800 CONTACTS ANTITRUST LITIGATION | Case No. MDL No. 2770 |

**PROOF OF SERVICE**

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I hereby certify that on February 15, 2017, I authorized the electronic filing of the foregoing 1-800 CONTACTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR TRANSFER AND COORDINATION OF RELATED ACTIONS PURSUANT TO 28 U.S.C. § 1407 with the Clerk of the Court using the CM/ECF system. I further certify that all the parties on the attached service list are served via electronic mail.

Dated: February 15, 2017

Respectfully submitted,

*/s/ Rohit Singla*

Rohit Singla
MUNGER TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907
Telephone: (415) 512-4000
rohit.singla@mto.com

**SERVICE LIST**

<table>
<tr><th>CIVIL ACTION</th><th>COUNSEL OF RECORD</th></tr>
<tr><td rowspan="2">J THOMSON AND WILLIAM P. DUNCANSON vs. 1-800 CONTACTS, INC., VISION DIRECT, INC. and DOES 1-15<br><br>U.S. District Court for the District of Utah, Central Division<br><br>No. 2:16-cv-01183-TC</td><td>Attorneys for Plaintiffs J THOMPSON & WILLIAM P. DUNCANSON<br><br>Jared D. Scott<br>Thomas R Karrenberg<br>ANDERSON & KARRENBERG<br>50 W. Broadway, Suite 700<br>Salt Lake City, UT 84101<br>(801) 534-1700<br>Email: jscott@aklawfirm.com<br>Email: tkarrenberg@aklawfirm.com<br><br>Steven M. Jodlowski<br>ROBBINS GELLER RUDMAN & DOWD<br>655 W. Broadway, Suite 1900<br>San Diego, CA 92101<br>(619) 231-1058<br>Email: sjodlowski@rgrdlaw.com</td></tr>
<tr><td>Attorneys for Defendant 1-800 CONTACTS, INC.<br><br>Robert S. Clark<br>Sara M. Nielson<br>PARR BROWN GEE & LOVELESS<br>101 S. 200 E, Suite 700<br>Salt Lake City, UT 84111<br>(801) 532 7840<br>Email: rclark@parrbrown.com<br>Email: snielson@parrbrown.com</td></tr>
<tr><td></td><td>Attorneys for Defendant VISION DIRECT, INC.<br><br>Jeffrey C. Bank<br>Chul Pak<br>Robert M. Corp<br>WILSON SONSINI GOODRICH & ROSATI<br>1301 Avenue of the Americas, 40th Floor<br>New York, NY 10019<br>(212) 497-7728<br>Email: jbank@wsgr.com<br>Email: cpak@wsgr.com<br>Email: rcorp@wsgr.com<br><br>Steven H. Bergman<br>Tyler Anne Dever<br>RICHARDS BRANDT MILLER NELSON<br>P.O. Box 2465<br>299 S. Main St., 15th Floor<br>Salt Lake City, UT 841102465<br>(801) 531-2000</td></tr>
</table>

| | |
|---|---|
| | Email: stevenbergman@rbmn.com<br>Email: tylerdever@rbmn.com |
| PAM STILLINGS vs. 1-800 CONTACTS, INC.<br><br>United States District Court for the District of Utah, Central Division<br><br>**No. 2:16-cv-01257-TS** | ***Attorneys for Plaintiff PAM STILLINGS***<br><br>William A. Markham<br>Dorn Bishop<br>Jason Eliaser<br>LAW OFFICES OF WILLIAM MARKHAM PC<br>550 W C St. Ste. 2000<br>San Diego, CA 92101<br>(619) 221-4400<br>Email: wm@markhamlawfirm.com<br>Email: db@markhamlawfirm.com<br>Email: je@markhamlawfirm.com<br><br>Jason M. Kerr<br>PRICE PARKINSON & KERR PLLC<br>5742 W. Harold Gatty Drive<br>Salt Lake City, UT 84116<br>(801) 517-7088<br>Email: jasonkerr@ppktrial.com<br><br>Ronald Marron<br>Mike Houchin<br>LAW OFFICES OF RONALD A MARRON APLC<br>651 Arroyo Drive<br>San Diego, CA 92103<br>(619) 696-9006<br>Email: ron.marron@gmail.com<br>Email: mike@consumersadvocates.com |
| | ***Attorneys for Defendant 1-800 CONTACTS, INC.***<br><br>Robert S. Clark<br>Sara M. Nielson<br>PARR BROWN GEE & LOVELESS<br>101 S. 200 E, Suite 700<br>Salt Lake City, UT 84111<br>(801) 532 7840<br>Email: rclark@parrbrown.com<br>Email: snielson@parrbrown.com |
| ALEXA BEAN vs. 1-800 CONTACTS, INC.<br><br>United States District Court for the Eastern District of Pennsylvania, Philadelphia Division<br><br>**No. 2:16-cv-05726-AB** | ***Attorneys for Plaintiff ALEXA BEAN***<br><br>Richard M. Golomb<br>Ruben Honik<br>David J. Stanoch<br>Kenneth J. Grunfeld<br>GOLOMB & HONIK, P.C.<br>1515 Market Street, Suite 1100<br>Philadelphia, PA 19102 |

| | |
|---|---|
| | (215) 985-9177<br>Email: rgolomb@golombhonik.com<br>Email: rhonik@golombhonik.com<br>Email: dstanoch@golombhonik.com<br>Email: kgrunfeld@golombhonik.com |
| | ***Attorneys for Defendant 1-800 CONTACTS, INC.***<br><br>Paul H. Saint-Antoine<br>Todd Nolan Hutchison<br>DRINKER, BIDDLE & REATH LLP<br>One Logan Square<br>18th and Cherry Streets<br>Philadelphia, PA 191036996<br>(215) 988-2990<br>Email: paul.saintantoine@dbr.com<br>Email: todd.hutchison@dbr.com |
| TAYLOR ZIMMERMAN, SARA HARTMAN, IYSHA ABED, ROBERT WEINSTEIN, JILL SCHULSON, and LEIA PINTO vs. 1-800 CONTACTS, INC.<br><br>United States District Court for the Eastern<br>District of Pennsylvania, Philadelphia Division<br><br>**No. 2:16-cv-06417-AB** | ***Attorneys for Plaintiffs TAYLOR ZIMMERMAN, SARA HARTMAN, IYSHA ABED, ROBERT WEINSTEIN, JILL SCHULSO and LEIA PINTO***<br><br>Joshua D. Wolson<br>Jerry Desiderato<br>DILWORTH PAXSON LLP<br>1500 Market St., Suite 3500E<br>Philadelphia, PA 191022101<br>(215) 575-7295<br>Email: jwolson@dilworthlaw.com<br>Email: jdesiderato@dilworthlaw.com |
| | ***Attorneys for Defendant 1-800 CONTACTS, INC.***<br><br>Paul H. Saint-Antoine<br>Todd Nolan Hutchison<br>DRINKER, BIDDLE & REATH LLP<br>One Logan Square<br>18th and Cherry Streets<br>Philadelphia, PA 191036996<br>(215) 988-2990<br>Email: paul.saintantoine@dbr.com<br>Email: todd.hutchison@dbr.com |

<table>
<tr><td>DANIEL J. BARTOLUCCI and EDWARD UNGVARSKY vs. 1-800 CONTACTS, INC.<br><br>United States District Court for the District of Columbia<br><br>No. 1:17-cv-00097-ABJ</td><td>Attorneys for Plaintiffs DANIEL J. BARTOLUCCI and EDWARD UNGVARSKY<br><br>Scott E. Gant<br>William Isaacson<br>BOIES, SCHILLER & FLEXNER LLP<br>1401 New York Avenue, NW, 11th Floor<br>Washington, DC 20005<br>(202) 237-2727<br>Email: sgant@bsfllp.com<br><br>Carl Goldfarb<br>BOIES, SCHILLER & FLEXNER LLP<br>401 East Las Olas Blvd, Suite 1200<br>Fort Lauderdale, FL 33301<br>(954) 356-0011</td></tr>
<tr><td rowspan="2">ELIZABETH HENRY vs. 1-800 CONTACTS, INC., VISION DIRECT, INC., and DOES 1-15<br><br>United States District Court for the District of Columbia<br><br>No. 1:17-cv-00117</td><td>Attorneys for Plaintiff ELIZABETH HENRY<br><br>Matthew Evan Miller<br>CUNEO GILBERT & LADUCA, LLP<br>507 C Street, NE<br>Washington, DC 20002<br>(202) 587-5067<br>Email: mmiller@cuneolaw.com</td></tr>
<tr><td>Attorneys for Defendant VISION DIRECT, INC.<br><br>Jeffrey C. Bank<br>Chul Pak<br>Robert M. Corp<br>WILSON SONSINI GOODRICH & ROSATI (NY)<br>1301 Avenue of the Americas, 40th Floor<br>New York, NY 10019<br>(212) 497-7728<br>Email: jbank@wsgr.com<br>Email: cpak@wsgr.com<br>Email: rcorp@wsgr.com</td></tr>
</table>