**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE: 1-800 CONTACTS ANTITRUST LITIGATION | ) ) ) | MDL No. 2770 |

**RESPONSE OF PLAINTIFFS J THOMPSON AND WILLIAM P. DUNCANSON TO MOTION FOR TRANSFER AND COORDINATION OF RELATED ACTIONS TO THE DISTRICT OF COLUMBIA**

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. FACTUAL AND PROCEDURAL BACKGROUND .......... 2

III. ARGUMENT .......... 3

- A. Transfer and Coordination or Consolidation of the Related Actions Is Appropriate Under §1407 .......... 3
- B. The District of Columbia Is the Most Appropriate Forum for Transfer and Coordination or Consolidation of Pretrial Proceedings .......... 4
  - 1. The District of Columbia Has the Required Experience and Resources to Adjudicate the Related Actions .......... 4
  - 2. The District of Columbia Has Favorable Docket Conditions, Permitting Efficient and Timely Litigation .......... 5
  - 3. A Significant Number of Witnesses and Evidence Are Located in and Around the District of Columbia .......... 5
  - 4. The District of Columbia Is a Convenient Forum .......... 6
- C. In the Alternative, the Panel Should Transfer the Related Actions to the District of Utah .......... 7

IV. CONCLUSION .......... 7

Pursuant to Title 28, §1407 of the United States Code ("§1407") and Rule 6.1(c) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, plaintiffs J Thompson and William P. Duncanson ("Plaintiffs"),[1] through their undersigned attorneys, respectfully submit this response to the motion to transfer and coordinate related actions in the United States District Court for the District of Columbia ("District of Columbia") (MDL No. 2770, Dkt. No. 1), filed by plaintiffs Daniel Bartolucci and Edward Ungvarsky ("Movants").

## I. INTRODUCTION

Plaintiffs Thompson and Duncanson agree with Movants that transfer and coordination of the six Related Actions is appropriate.[2]

While they believe that any of the three venues where the Related Actions are pending are appropriate venues and more than capable of handling this MDL proceeding, Plaintiffs submit that the relevant factors for determining the coordination venue give the edge to the District of Columbia because it: (1) has considerable experience with antitrust law and with MDL proceedings, including civil actions stemming from or proceeding alongside parallel Federal Trade Commission ("FTC") proceedings; (2) has favorable docket conditions, permitting efficient and timely litigation; (3) has a significant number of witnesses and evidence located in and around it; and (4) is a convenient and accessible forum for this geographically dispersed litigation.

In the alternative, if the Panel does not transfer the Related Actions to the District of Columbia, Plaintiffs believe the Panel should coordinate and transfer the Related Actions to the United States District Court for the District of Utah ("District of Utah") and assign the matter to the Honorable Tena Campbell, who is presiding over the low-numbered action in the District of Utah. As defendant 1-800 Contacts, Inc. ("1-800 Contacts") recently recognized in connection with its pending motion for consolidation of the two District of Utah actions, Judge Campbell is a qualified, seasoned jurist capable of overseeing the Related Actions.

---

[1] *Thompson, et al. v. 1–800 Contacts, Inc., et al.*, No. 2:16-cv-01183-TC (D. Utah).

[2] "Related Actions" refers collectively to the cases listed on the Schedule of Actions attached to Movants' motion to transfer (MDL No. 2770, Dkt. No. 1).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' case is one of six federal antitrust class actions pending in three different jurisdictions containing substantially similar claims and against similar defendants. Two actions, including Plaintiffs' action, are pending in the District of Utah; two actions are pending in United States District Court for the Eastern District of Pennsylvania; and two actions are pending in the District of Columbia.

The Related Actions all assert violations of §1 of the Sherman Act. 15 U.S.C. §1. In particular, they allege that by 2003, after a long period of dominating the online market, 1-800 Contacts recognized that it was losing sales to competitors who offered the same contact lenses at lower prices. Instead of decreasing its prices to compete with these competitors, 1-800 Contacts devised a plan to manipulate the online market by limiting its competitors' online advertising. In particular, beginning in 2004, 1-800 Contacts sent a series of cease-and-desist letters to competing online retailers threatening to sue them for trademark infringement for their purchases of search engine advertising based on 1-800 Contacts' purported trademarks. At least 14 rival sellers acceded to 1-800 Contacts' threats and entered into unlawful agreements under which they agreed not to place bids for online advertising that harmed 1-800 Contacts' interests.

In August 2016, the FTC initiated administrative proceedings in Washington, D.C. against 1-800 Contacts for violating §5 of the Federal Trade Commission Act, which prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. §45(a)(1); Declaration of David W. Mitchell in Support of the Response of Plaintiffs J Thompson and William P. Duncanson to Motion for Transfer and Coordination of Related Actions to the District of Columbia ("Mitchell Decl."), Ex. 1, Complaint. The FTC action has moved quickly, and, on February 1, 2017, the FTC granted partial summary judgment against 1-800 Contacts, holding that 1-800 Contacts could not raise affirmative defenses that its allegedly anti-competitive conduct in online advertising is immunized by the First Amendment or the reasonableness of its intellectual property disputes. In contrast, none of the Related Actions have proceeded beyond challenges to the forum of the litigation.

## III. ARGUMENT

### A. Transfer and Coordination or Consolidation of the Related Actions Is Appropriate Under §1407

Plaintiffs agree with Movants that transfer and coordination of the Related Actions is warranted. Pursuant to §1407, transfer of actions to one district for coordinated or consolidated pretrial proceedings is appropriate where: (1) actions pending in different districts involve one or more common questions of fact; (2) the transfer of such actions will be for the convenience of the parties and witnesses; and (3) the transfer will promote the just and efficient conduct of such actions. 28 U.S.C. §1407(a).

Here, all the Related Actions allege, among other things, that defendants entered into interlocking agreements and engaged in related conduct to artificially raise, maintain, fix and/or stabilize the prices for contact lenses sold online, directly-to-consumers throughout the United States, in violation of §1 of the Sherman Act, 15 U.S.C. §1. Many common questions of fact or law exist, including:

- Whether 1-800 Contacts and its competitors entered into agreements, combinations or one or more conspiracies to rig the bidding in search engine advertising auctions, increase or maintain supracompetitive prices for contact lenses, allocate the market for online sales of contact lenses, and/or prevent the dissemination of information regarding pricing of contact lenses by competitors;

- The duration of the alleged conspiracy and what acts were performed by 1-800 Contacts and its rivals in furtherance of the conspiracy;

- Whether defendants violated §1 of the Sherman Act, 15 U.S.C. §1;

- Whether and to what extent defendants caused injury to plaintiffs and members of the putative class, and if so, the appropriate amount of damages; and

- Whether plaintiffs and the putative class are entitled to injunctive relief to prevent the continuation or furtherance of the violation of §1 of the Sherman Act.

Determination of these and other common issues in a single district will benefit the parties and witnesses and serve to promote the efficient prosecution and resolution of the Related Actions. Indeed, even before MDL proceedings were initiated, defendants sought – and plaintiffs agreed – to work to informally coordinate their discovery efforts while the issue of venue was settled. This

Panel routinely centralizes cases arising out of alleged antitrust violations. *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 1720, 2013 WL 8123000, at *1 (J.P.M.L. Dec. 18, 2013) (transferring related antitrust cases under §1407 because, among other things, the actions "involve[d] common questions of fact"); *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 598 F. Supp. 2d 1366, 1367 (J.P.M.L. 2009) (same). Accordingly, transfer and coordination or consolidation is warranted here.

### B. The District of Columbia Is the Most Appropriate Forum for Transfer and Coordination or Consolidation of Pretrial Proceedings

Given the current landscape of the various actions and the presence of parallel FTC proceedings, Plaintiffs also agree with Movants that transfer and coordination in the District of Columbia makes the most sense here. The Panel considers a variety of factors when determining the proper venue for transfer and coordination or consolidation. Factors generally considered include: (1) the familiarity and expertise of the transferee district with the underlying issues present in the litigation; (2) the respective caseloads of the proposed transferee district courts; (3) the location of the parties, witnesses, and documents; and (4) the convenience of the proposed transferee district for parties and witnesses. *See In re Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practices Litig.*, 844 F. Supp. 2d 1380, 1380 (J.P.M.L. 2012); *In re Cardiac Devices Qui Tam Litig.*, 254 F. Supp. 2d 1370, 1373 (J.P.M.L. 2003).

#### 1. The District of Columbia Has the Required Experience and Resources to Adjudicate the Related Actions

One of the main factors that the Panel considers is the experience and resources of a potential transferee forum. *See, e.g.*, *In re Puerto Rican Cabotage Antitrust Litig.*, 571 F. Supp. 2d 1378, 1378 (J.P.M.L. 2008). The District of Columbia has substantial experience with antitrust litigation as well as with multidistrict litigation. During 2016, for example, 125 civil antitrust lawsuits were filed in the District of Columbia.[3] During 2015, the District of Columbia had 124 civil antitrust

[3] http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2016.pdf

filings.[4] In contrast, only two antitrust suits were filed in the District of Utah in 2015 and 2016.[5] Accordingly, the District of Columbia has the requisite experience and resources to manage the Related Actions.

### 2. The District of Columbia Has Favorable Docket Conditions, Permitting Efficient and Timely Litigation

The Panel also considers how well-suited the proposed transferee district is to manage the litigation at a steady and expeditious pace. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 290 F. Supp. 2d 1374, 1376 (J.P.M.L. 2003) (transferee court "enjoys general docket conditions permitting the Panel to effect the Section 1407 assignment to a court with the present resources to devote to the pretrial matters that this docket is likely to require").

The District of Columbia docket conditions are more favorable than those in the District of Utah, the next most appropriate jurisdiction. In particular, the District of Columbia has about 180 civil cases per judgeship and the median time from filing to disposition is approximately 7.8 months.[6] In contrast, the District of Utah has about 280 civil cases per judgeship and the median time from filing to disposition is 10.4 months.[7] As such, the District of Columbia's docket is best suited to handle this MDL.

### 3. A Significant Number of Witnesses and Evidence Are Located in and Around the District of Columbia

In deciding which district is appropriate for transfer and coordination or consolidation, the Panel considers the nexus between the evidence and witnesses relevant to the related actions and the location of the MDL proceeding. *See In re Union Pac. R.R. Co. Emp't Practices Litig.*, 314 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004) (considering where potential witnesses and documents are likely to

---

4 http://www.uscourts.gov/sites/default/files/data_tables/fcms_district_profiles_december_2015. pdf

5 http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2016.pdf; http://www.uscourts.gov/sites/default/files/data_tables/fcms_district_profiles_december_2015.pdf

6 http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2016.pdf

7 *Id*.

be located); *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, 435 F. Supp. 2d 1342, 1344 (J.P.M.L. 2006) (same).

A significant amount of documentation and testimony that will be relevant to these cases has been or will be produced in the FTC action filed in Washington, D.C., which has been heavily litigated since its inception in 2016. As part of those proceedings, 1-800 Contacts has produced documents and responded to written discovery, including the FTC's requests for production and admissions and interrogatories. *See* Mitchell Decl., Ex. 2. It also appears that the FTC has taken a number of depositions of 1-800 Contacts' witnesses. *See* Mitchell Decl., Exs. 3-4. Additionally, the administrative trial in the FTC action will take place only a few blocks from the District of Columbia courthouse, and it is scheduled to begin on April 11, 2017, two months from now. *See* Mitchell Decl., Ex. 5.

Of the 14 companies that entered into agreements at issue in this litigation, two are located in New York, two are located in Ohio, two in Pennsylvania, two in Illinois, and one in Texas. The District of Columbia is closer than Utah to all of these companies. Thus, while 1-800 Contacts is located in Utah, the majority of the online contact lens retailer companies who entered into the bidding agreements being challenged in these actions are geographically located closer to Washington D.C. than to Salt Lake City. Accordingly, the location of witnesses and the convenience of the parties supports transfer and coordination of the related actions in the District of Columbia.

**4. The District of Columbia Is a Convenient Forum**

In choosing an appropriate transferee district, the Panel also considers the convenience of the parties, their counsel, and potential witnesses. *See In re Prempro Prods. Liab. Litig.,* 254 F. Supp. 2d 1366, 1368 (J.P.M.L. 2003) (selecting transferee district based, in part, on its geographic centrality).

The District of Columbia is in a metropolitan area centrally located with convenient transportation and is easily accessible for everyone involved in this litigation. Notably, it is served by three major airports, Dulles International, Baltimore Washington International ("BWI"), and Ronald Reagan Washington National Airport ("Ronald Reagan"), which is less than four miles away from the District of Columbia, and there are nonstop flights from Salt Lake City to both Ronald

Reagan and BWI airports. In contrast, Salt Lake City is primarily served by one airport. Accordingly, the convenience factor also favors the transfer to and coordination of the Related Actions in the District of Columbia.

### C. In the Alternative, the Panel Should Transfer the Related Actions to the District of Utah

To the extent the Panel does not agree that the District of Columbia is the appropriate forum for the Related Actions, Plaintiffs believe the Panel should transfer and coordinate the Related Actions, and any and all additional related actions against defendants that may be brought to the attention of the Panel, to the District of Utah and assign the matter to Judge Tena Campbell. As noted above, Judge Campbell is presiding over the lower-numbered District of Utah action and, by local rule, is designated to preside over the District of Utah actions if they are consolidated. *See* District of Utah, Civ. Rules of Practice, Rule 42-1. Further, the parties to the District of Utah actions have agreed that consolidation of the two actions pending there is appropriate, and Plaintiffs have asked for them to be consolidated in front of Judge Campbell (which no party has opposed).

## IV. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Panel transfer the Related Actions to the District of Columbia or, in the alternative, to Judge Campbell in the District of Utah for coordinated and/or consolidated pretrial proceedings.

DATED: February 15, 2017

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
PATRICK J. COUGHLIN
DAVID W. MITCHELL
BRIAN O. O'MARA
STEVEN M. JODLOWSKI
CARMEN A. MEDICI

s/ David W. Mitchell
DAVID W. MITCHELL

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
patc@rgrdlaw.com
davidm@rgrdlaw.com
bomara@rgrdlaw.com
sjodlowski@rgrdlaw.com
cmedici@rgrdlaw.com

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
GEORGE C. AGUILAR
GREGORY DEL GAIZO
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: 619/525-3990
619/525-3991 (fax)
brobbins@robbinsarroyo.com
gaguilar@robbinsarroyo.com
gdelgaizo@robbinsarroyo.com

ANDERSON & KARRENBERG
THOMAS R. KARRENBERG (#3726)
JARED SCOTT
50 West Broadway, Suite 700
Salt Lake City, UT 84101
Telephone: 801/534-1700
801/364-7697 (fax)

BROWNSTEIN LAW GROUP, PC
JOSHUA S. BROWNSTEIN
M. RYDER THOMAS
353 Sacramento Street, Suite 1140
San Francisco, CA 94111
Telephone: 415/986-1338
415/986-1231 (fax)

Attorneys for Plaintiffs J Thompson and
William P. Duncanson